UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAUREEN ABSTON, individually, and as Personal Representative of the Estate of RICHARD ABSTON; COREY ABSTON; JACY ABSTON; LINDA ABSTON,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF MERCED, et al.,<br><br>Defendants. | 09-CV-00511-OWW-GSA<br><br>MEMORANDUM DECISION RE: DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (Doc. 16) |

## I.  INTRODUCTION

Before the court is a Rule 12(c) motion for judgment on the pleadings brought by Defendant Shane Kensey, a California Highway Patrol officer.  The motion is directed at two claims asserted by Plaintiffs Maureen, Corey, Jacy, and Linda Abston in their complaint for a "Violation of Civil Rights."  Defendant City of Merced and its police officers named as defendants in this case, Defendants Russ Thomas, J. Hart, B. Dalia, and N. Arellano, have joined Kensey's motion.

## II.  BACKGROUND

In this civil rights case, Richard Abston, a retired truck driver, died after allegedly being tased by law enforcement.  Mr. Abston's surviving spouse, Maureen, and his surviving children, Corey, Jacy, and Linda, are the plaintiffs in this case.  The following background facts are taken from their complaint, Document ("Doc.") 1, filed March 18, 2009.

A.  Allegations In The Complaint

On the morning of February 7, 2008, the California Highway

1

Patrol dispatched information regarding a vehicle traveling the wrong way on Highway 99.  Officer Kensey responded to the dispatch and stopped a silver Dodge pickup truck, driven by Mr. Abston, which had sideswiped several vehicles. (Doc. 1 at 3.)

At the time of the stop, Mr. Abston had no shirt on, and officer Kensey could see Mr. Abston's torso.  On his sternum, Mr. Abston had a 9-inch scar as a result of open heart surgery about two years prior.  Mr. Abston had a defibrillator implanted in his chest to treat his history of congestive heart failure and cardiomyopathy. (*Id.* at 3-4.)

Officer Kensey attempted to remove Mr. Abston from the stopped vehicle, but Mr. Abston allegedly resisted.  Purportedly, Mr. Abston was sweating profusely, began "speaking of God and of helping a child," seemed agitated and appeared under the influence of a drug.  With a baton, Officer Kensey struck Mr. Abston several times allegedly to get the "obviously intoxicated" Mr. Abston under control and arrest him. (*Id.* at 4.)

Mr. Abston fled from the vehicle to a big rig stopped in the middle of Highway 99 and climbed on top of the big rig's cab.  Officer Kensey pursued Mr. Abston, climbed onto the cab, and then struck Mr. Abston with the baton.  Mr. Abston, however, did not desist his resistance.  Officer Kensey then sprayed "O.C. spray" (also known as pepper spray) at Mr. Abston. (*Id.* at 4.)

Several defendant officers from the Merced Police Department arrived on the scene, including officers Arellano and Hart.  Arellano climbed onto the big rig's cab, directed Mr. Abston to get down, and then held Mr. Abston against the big rig.  Mr. Abston "continued to struggle" and one officer recommended that they

2

"simply let go" of him.  For reasons unspecified, Mr. Abston was released and he ran from the officers.  On foot, Hart pursued the topless and intoxicated Mr. Abston and shot him in the back with a stun gun, applying the electronic charge for an unknown period of time.  Mr. Abston fell to the ground face-first and broke his nose in the process.  Mr. Abston continued to struggle and to "speak[] of God."  The officers repeatedly told Mr. Abston to "chill out."  Officer Dalia arrived and noticed Mr. Abston on the ground and several officers struggling with him.  While Mr. Abston lay face down, several officers "continued using excessive force" on Mr. Abston. (*Id.* at 4-6.)

A female C.H.P. officer arrived on the scene and placed nylon restraints on Mr. Abston's legs.  At some point, Mr. Abston stopped moving, his face turned purple, and he was turned onto his back.  Mr. Abston was "coding."  Paramedics attended to Mr. Abston.  An unnamed police officer also attempted to locate Mr. Abston's pulse.  That officer then took over chest compressions, but was unsuccessful, and Mr. Abston died.[1] (*Id.* at 6.)

Allegedly, Taser International, a company that designs, tests, delivers and prepares training materials for stun guns, has issued two published legal warnings specifically notifying taser users to avoid targeting the chest area of individuals with known histories of heart attacks.  One publication also noted that individuals exhibiting symptoms of "Excited Delirium" are susceptible to "Sudden In-Custody Death Syndrome" when tased. (*Id.* at 5.)

---

[1] **A witness with a video camera recorded significant portions of the incident.  The witness turned the video into the Merced County Sheriff's Department.**

3

**B.   Plaintiffs' Claims**

In their complaint, Plaintiffs allege that Mr. Abston "died as a direct consequence of the excessive force used against him by the Defendants involved in this incident." (*Id.* at 8.)   Plaintiffs allege seven causes of action, only two of which are at issue in this motion: the "First Cause of Action" and the "Fifth Cause of Action."[2]

**1.   First Cause of Action – 42 U.S.C. § 1983**

The First Cause of Action alleges a civil rights violation under § 1983 against officers Hart, Dalia, Arellano, and Kensey. In pertinent part, Plaintiffs assert:

> 38.   In doing the acts complained of herein [set forth above] and killing Plaintiffs' decedent, RICHARD ABSTON, Defendants . . . acted under color of law to deprive plaintiffs of certain constitutionally protected rights, including, but not limited to:
>
> a.   The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

No other constitutional violations are described in the First Cause of Action.   The First Cause of Action is asserted individually by each named Plaintiff.   The caption of the complaint specifies that Ms. Abston is suing individually *and* as the personal representative of Mr. Abston's estate.   Both parties agree that this claim is asserted by Ms. Abston on behalf of Mr. Abston's estate.   The First

---

[2]   The causes of action in Plaintiffs' complaint are misnumbered.   Plaintiffs allege a "Fifth Cause of Action" and then allege a "Seventh Cause of Action" and an "Eighth Cause of Action" without alleging a sixth cause of action.   Even though an "Eighth Cause of Action" is so denominated, there are a total of seven causes of action plead in Plaintiffs' complaint.

Cause of Action consists of two sets of claims: (1) each individual plaintiff is alleging a civil rights violation for their loss arising out the alleged excessive force and death of Mr. Abston; and (2) Ms. Abston, as the personal representative, is asserting a claim on behalf of Mr. Abston's estate for the damages he sustained.

    2.   <u>Fifth Cause of Action – Cal. Civ. Code § 52.1</u>

The Fifth Cause of Action alleges a civil rights violation under California Civil Code § 52.1 against officers Hart, Dalia, Arellano, and Kensey.  Plaintiffs allege:

> 58.  The conduct of Defendants . . . as described herein, acting in the course and scope of their employment for Defendant City and the State of California, violated California Civil Code Section 52.1, in that they interfered with Plaintiffs' decedent's exercise and enjoyment of his civil rights, through use of wrongful and excessive force, and failure to make any proper or reasonable arrest of said decedent.

> 59.  As a direct and proximate result of Defendants' violation of Civil Code Section 52.1, Plaintiffs' decedent suffered [a] violation of his constitutional rights, and suffered damages as set forth herein.

> 60.  Since this conduct occurred in the course and scope of their employment, Defendant CITY is therefore liable pursuant to respondeat superior.

This cause of action is brought on behalf of Mr. Abston's estate.

C.   <u>Defendants' Motion</u>

Defendants advance one principal argument against the First Cause of Action.  Defendants argue that Plaintiffs cannot maintain their own Fourth Amendment, excessive force claims under § 1983 because they were not subject to the alleged excessive force.  Defendants do not contest the Estate's Fourth Amendment, excessive force claim.  As to the Fifth Cause of Action, Defendants argue and Plaintiffs impliedly concede that Ms. Abston cannot bring a claim

1  on behalf of Mr. Abston's estate under California Civil Code §
2  52.1, as this claim did not survive his death.  Plaintiffs oppose
3  the motion only as to the First Cause of Action.

### III.   STANDARD OF DECISION

5       A party may move for judgment on the pleadings after the
6  pleadings are closed. Fed. R. Civ. P. 12(c).  A Rule 12(c) motion
7  challenges the legal adequacy of the opposing party's pleadings.
8  *Westlands Water Dist. v. Bureau of Reclamation*, 805 F.Supp. 1503,
9  1506 (E.D. Cal. 1992).  In deciding a motion for judgment on the
10 pleadings, a court must "must accept all factual allegations in the
11 complaint as true and construe them in the light most favorable to
12 the non-moving party." *Fleming v. Pickard*, __ F.3d __, 2009 WL
13 2871532, at *2 (9th Cir. Sept. 9, 2009). "[T]he allegations of the
14 moving party which have been denied are assumed to be false." *Hal*
15 *Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550
16 (9th Cir. 1990).

17      "Judgment on the pleadings is properly granted when there is
18 no issue of material fact in dispute, and the moving party is
19 entitled to judgment as a matter of law." *Fleming*, 2009 WL 2871532
20 at *2.  Judgment on the pleadings is not appropriate if the court
21 "goes beyond the pleadings to resolve an issue; such a proceeding
22 must properly be treated as a motion for summary judgment." *Hal*
23 *Roach Studios*, 896 F.2d at 1550.  "A court may, however, consider
24 certain materials-documents attached to the complaint, documents
25 incorporated by reference in the complaint, or matters of judicial
26 notice-without converting the motion to dismiss [or motion for
27 judgment on the pleadings] into a motion for summary judgment."
28 *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see*

**6**

*also Summit Media LLC v. City of Los Angeles*, 530 F. Supp. 2d 1084, 1096 (C.D. Cal. 2008).

To assess the adequacy of pleadings, the same legal standard applies to a motion for judgment on the pleadings as applies to a Rule 12(b)(6) motion to dismiss. *See Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

## IV.   DISCUSSION AND ANALYSIS

### A.   First Cause Of Action – § 1983

"Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) (internal quotation marks omitted). Because Fourth Amendment rights are personal and cannot be vicariously asserted, Ms. Abston and her children lack standing to assert their own Fourth Amendment claims for the alleged excessive force used on Mr. Abston. *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998); *Smith v. City of Fontana*, 818 F.2d 1411, 1417 (9th Cir. 1987), *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999); *Crumpton v. Gates*, 947 F.2d 1418, 1422 (9th Cir. 1991).

In *Crumpton,* the court rejected a Fourth Amendment claim asserted by a son whose father was shot and killed by the police. The court reasoned:

> Viewing the allegations in the light most favorable to Crumpton, as we must on review of summary judgment, Crumpton's father may have sustained a constitutionally cognizable Fourth Amendment deprivation when shot by police . . . . *But Crumpton cannot assert his father's Fourth Amendment rights.*

*Crumpton*, 947 F.2d at 1422 (emphasis added). Similarly, in *Smith,* the court rejected a Fourth Amendment, excessive force claim

**7**

asserted by the children of a man shot and killed by the police. The court reasoned:

> Mr. Smith's children, suing in their individual capacities, also assert a claim for relief under the Fourth Amendment. However, the Supreme Court has held that Fourth Amendment rights are personal rights which . . . may not be vicariously asserted. *The children were not directly subjected to the excessive use of state force and therefore cannot maintain personal causes of action under section 1983 in reliance on this Fourth Amendment theory*.

*Smith*, 818 F.2d at 1417 (emphasis added) (citation and internal quotation marks omitted).

Because Ms. Abston and her children were not directly subjected to the alleged excessive force used on Mr. Abston, they cannot maintain personal civil rights causes of action under the Fourth Amendment. Mr. Abston's Fourth Amendment rights were personal to him and may be asserted, if at all, only by his estate. *Moreland*, 159 F.3d at 369; *Smith*, 818 F.2d at 1416-17.

Plaintiffs do not dispute that they cannot maintain their own Fourth Amendment causes of action under § 1983. Rather Plaintiffs' opposition suggests the First Cause of Action does *not* actually allege such Fourth Amendment claims:

> Representing Decedent ABSTON'S estate, in the first cause of action Plaintiff MAUREEN ABSTON claims that the Defendant Officers violated the Decedent's Fourth Amendment right to be free from unreasonable searches and seizures. Additionally, each Plaintiff asserts a personal substantive due process claim based on the violation of their right to familial companionship and society pursuant to 42 U.S.C. § 1983 in violation of their Fourteenth Amendment rights.

(Doc. 19 at 8.) In other words, Plaintiffs suggest that the only Fourth Amendment claim pleaded in the complaint is asserted on behalf of Mr. Abston's estate. This reading of the complaint is

8

untenable.

The First Cause of Action specifically alleges that the officers "acted under color of law to deprive *plaintiffs* of certain constitutionally protected rights" including "[t]he right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution." (Doc. 1 at 9.)[3] Ms. Abston and her children are the "plaintiffs" in the case and, accordingly, they have alleged Fourth Amendment claims. The First Cause of Action gives no notice that Plaintiffs claim a Fourteenth Amendment due process right for loss of familial rights.

Ms. Abston and the children cannot maintain their own Fourth Amendment claims under § 1983 for the alleged excessive force used on Mr. Abston. Their individual Fourth Amendment claims are DISMISSED WITHOUT LEAVE TO AMEND.

B.   <u>Fifth Cause of Action – Cal. Civ. Code § 52.1</u>

Section 52.1 of the California Civil Code provides individuals with a statutory means by which to seek relief, in a civil case, for certain misconduct that interferes with their rights under federal or state constitutional provisions or laws. As stated in § 52.1(a):

> If a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney may bring a civil action . . . .

---

[3] In this case, the Fourth Amendment applies to the officers' conduct by virtue of the Fourteenth Amendment.

In turn, § 52.1(b) grants individuals the right to civilly sue only in their "own name" and on their "own behalf" for conduct prohibited under § 52.1(a):

> Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute *in his or her own name and on his or her own behalf* a civil action for damages, . . . , injunctive relief, and other appropriate equitable relief . . . .

(Emphasis added.)

In the Fifth Cause of Action, Ms. Abston asserts a § 52.1 claim on behalf of Mr. Abston's estate. A private plaintiff, however, like Ms. Abston, cannot assert a claim on behalf of a decedent under § 52.1 because the claim must be "on his or her own behalf." *Bay Area Rapid Transit Dist. v. Superior Court*, 38 Cal. App. 4th 141, 144 (1995) (concluding that § 52.1 "is simply not a wrongful death provision" and "is limited to plaintiffs who themselves have been the subject of violence or threats"); *Tolosko-Parker v. County of Sonoma*, Nos. C 06-06841 CRB, C 06-06907 CRB, 2009 WL 498099, at *5 (N.D. Cal. Feb. 26, 2009) ("California Civil Code § 52.1 does not provide a right of action for the parents of a decedent; rather, it only provides for a personal cause of action for the person who has been subjected to violence or threats which interfered with that person's . . . rights."); *see also LeBlanc v. City of Los Angeles*, No. CV 04-8250 SVW (VBKx), 2006 WL 4752614, at *21-22 (C.D. Cal. Aug. 16, 2006). Plaintiffs do not challenge that Ms. Abston lacks standing to assert such a claim.

The motion as to the § 52.1 claim asserted on behalf of Mr. Abston's estate is GRANTED WITHOUT LEAVE TO AMEND.

10

**V.   CONCLUSION**

For the reasons stated:

1.   As to the First Cause of Action, Defendants' motion for judgment on the pleadings as to the Fourth Amendment claims asserted individually by Maureen, Corey, Jacy, and Linda Abston, is GRANTED WITHOUT LEAVE TO AMEND.

2.   As to the Fifth Cause of Action, Defendants' motion for judgment on the pleadings as to the § 52.1 claim asserted on behalf of Mr. Abston's estate is GRANTED WITHOUT LEAVE TO AMEND.

Defendant shall submit a form of order consistent with, and within five (5) days following electronic service of, this Memorandum Decision.


IT IS SO ORDERED.

Dated:   __October 20, 2009__          _____/s/ Oliver W. Wanger_____
                                        UNITED STATES DISTRICT JUDGE